IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION

| | | |
|---|---|---|
| **SEAN AND SARA McCONVILLE** | :: | **CASE NO. 5:22-CV-01277** |
| **9757 S. Delmonte Blvd.,** | :: | |
| **Streetsboro, OH 44241** | :: | **JUDGE: RUIZ** |
| | :: | |
| **Plaintiffs,** | :: | **FIRST AMENDED COMPLAINT:** |
| | :: | **BREACH OF CONTRACT; FRAUDULENT** |
| **-v-** | :: | **MISREPRESENTATION; NEGLIGENT** |
| | :: | **MISREPRESENTATION; FRAUD IN THE** |
| **GOODLEAP LLC (f/k/a Loanpal)** | :: | **INDUCEMENT/EXECUTION;** |
| **c/o CT Corporation System, statutory** | :: | **NEGLIGENT HIRING AND TRAINING;** |
| **agent** | :: | **CONSUMER PROTECTION ACT;** |
| **4400 Easton Commons Way, Ste 125** | :: | **DECLARATORY JUDGMENT; CIVIL** |
| **Columbus, OH 43219** | :: | **CONSPIRACY; NEGLIGENCE; PUNITIVE** |
| | :: | **DAMAGES** |
| **And** | :: | |
| | :: | |
| **JAYSON WALLER** | :: | |
| **923 Pleasant Street** | :: | |
| **Birmingham, MI 48009** | :: | |
| | :: | |
| **And** | :: | |
| | :: | |
| **TRIVEST PARTNERS, L.P.,** | :: | |
| **c/o David Gershman, statutory agent,** | :: | |
| **550 South Dixie Highway, Ste 300** | :: | |
| **Coral Gables, FL 33146** | :: | |
| | :: | |
| **Defendants.** | :: | |
| | :: | |

Now come Plaintiffs, Sean and Sara McConville by and through the undersigned Counsel, and for their First Amended Complaint, state as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      At all times relevant herein, Plaintiffs Sean and Sara McConville (hereinafter referred to as "Plaintiffs") resided in the City of Streetsboro, County of Portage and State of Ohio.

1

2.     At all times relevant herein, Power Home Solar, LLC, doing business as Pink Energy, (hereinafter referred to as "Pink Energy"), is/was a Delaware solar power company licensed to transact business in the State of Ohio, and was acting together with Defendants, Trivest Partners, L.P. and/or Jayson Waller, by and through its agents and/or employees by engaging in the solicitation, sale, installation, and maintenance of solar powered energy systems designed for residential use.

3.     On October 7, 2022, Pink Energy filed for Chapter 7 Bankruptcy, placing an automatic stay, and, as such, it has not been added as a party to this Complaint but will remain named in the allegations for sake of clarity.

4.     At all times relevant herein, Goodleap LLC (f/k/a Loanpal) ("GoodLeap") is/was a California limited liability company licensed to transact business in the State of Ohio and was acting in concert with and/or in a dual agency type relationship with Pink Energy, Defendant Trivest, L.P., and Defendant Jayson Waller, by, among other ways, providing financing to the Plaintiffs in the purchase of the Pink Energy solar system.

5.     At all times relevant herein, Defendant, Trivest Partner, L.P. (hereinafter referred to as "Trivest"), is/was a Florida limited partnership engaged in managing several private equity funds, including Pink Energy; held a 25% ownership in Pink Energy; was involved in the day-to-day operations of Pink Energy; and was an active participant in the facts giving rise to the within causes of action.

6.     Plaintiffs entered into a "Solar Energy System Purchase & Installation Agreement" (hereinafter "Sales Agreement") with Pink Energy and a Loan Agreement (hereinafter "Loan Agreement") with Defendant GoodLeap, through GoodLeap, Pink Energy, Trivest, or Defendant Jayson Waller's agents/employees and said contracts were entered into in Portage County, Ohio, and

form one of the bases of the within lawsuit. Copies of the Sales Agreement and the Loan Agreement are attached as Exhibits "A" and "B" of this Complaint.

7.      At all times relevant herein, Defendant Jayson Waller ("Waller") was a resident of Town of Davidson, County of Mecklenburg, and State of North Carolina, and was the founder and Chief Executive Officer of Pink Energy. Hereinafter Pink Energy, Trivest, and Defendant Waller shall collectively be referred to as the "Pink Energy Group."

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) by reason that the Plaintiffs are residents of the State of Ohio; Defendants are residents of the State of Florida, State of California and State of Michigan, thus creating diversity of citizenship; and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

9.      Venue is proper with this Court pursuant to 28 U.S.C. §1397 and Rule 3.8(c) of the Local Rules for the United States District Court for the Northern District of Ohio, Eastern Division, by reason that the claims set forth herein arose in the City of Streetsboro, County of Portage, and State of Ohio.

## GENERAL ALLEGATIONS

10.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

11.      In the summer of 2020, Plaintiffs initiated a search for vendors licensed to sell, install, and maintain solar equipment in order to utilize a more efficient and environmentally friendly energy source for their home.

12.      During that same time, the Pink Energy Group published to the general public, via various national and state media outlets, representations relating to:

3

A.      the quality and efficiency of their energy-saving products, including, but not limited to, its solar panels, inverters/converter, batteries, and other miscellaneous components;

B.      the quality of the installation of said products/equipment by the Pink Energy Group's installers;

C.      the kilowatt/electricity reduction/savings the plaintiffs would receive after installation; and

D.      the continued maintenance/repair of the equipment after the installation.

13.     Plaintiffs allege that each of the representations knowingly made by the Pink Energy Group were, collectively and separately, patently false, fraudulent, misleading, scientifically inaccurate, scientifically impossible to obtain, and contrary to law, exaggerated beyond mere puffery.

14.     In justifiable reliance on the truth of the representations made by the Pink Energy Group in their various solicitations, Plaintiffs contacted Pink Energy in September of 2020.

15.     On or about September 15, 2020, an agent/employee of Pink Energy and/or Defendants GoodLeap, Trivest, and/or Waller (hereinafter collectively referred to as the "Pink Energy Agent," "sales agent/employee," "Pink Energy Agent/Employee") accepted and scheduled an appointment on behalf of the Pink Energy Group and met the Plaintiffs at their residence located at Streetsboro, Ohio.

16.     The Pink Energy Agent/Employee, recognizing and acknowledging that Plaintiffs were, in fact, relying on his expertise and guidance as an employee/agent of the Pink Energy Group, made representations consistent with those which were contained in the Pink Energy Group's various advertisements, that:

A.    based on Plaintiffs' expressed expectations, the square footage of their dwelling, a review of their then-existing energy bills, knowledge of the local public utilities rate structure for solar-powered homes, the dwelling's unique topographical setting, and certain local meteorological data that a 7.92 kilowatt/hour system (24 solar panels) was appropriate to fully meet their expectations;

B.    there would be a significant reduction in Plaintiffs' present, monthly, electrical bill;

C.    the panels would produce a sufficient number of kilowatt hours to reduce Plaintiffs' usage/cost by a significant percentage of their yearly energy consumption;

D.     Plaintiffs would generate an average number of kilowatt hours per year based on the representations in paragraph A;

E.    upon timely execution of the Sales Agreement, they would receive additional financial benefits via Federal and/or State tax credits which could be applied through various options provided by Pink Energy and/or Defendant GoodLeap.

17.  The Pink Energy Group also provided Plaintiffs with an "energy efficiency package" (hereinafter referred to "EEP") which purportedly included miscellaneous "trinkets" such as LED lights bulbs, etc.

18.  As part of the sales presentation, the Pink Energy Agent/Employee grouped the solar system output and supposed EEP benefits together to calculate the amount of power Plaintiffs would draw from the electric grid versus the amount they would make/save by switching to the Pink Energy Group's solar system.

19.  Upon information and belief, the Pink Energy Group was selling its solar panels to customers at a high markup price.

5

20. The National Renewable Energy Laboratory ("NREL"), a branch of the U.S. Department of Energy, estimates that the average cost for the purchase and installation of a residential solar system was approximately $2.71 per watt for the calendar year 2021.[1]

21. Using NREL's average of $2.71 per watt, Plaintiffs should have paid approximately $21,463.20 for their 7.92-kilowatt solar system.

22. Defendants and Pink Energy charged Plaintiffs $47,728.00 ($6.02 per watt) for their solar system.

23. Upon information and belief, the Pink Energy Group directed and trained its employees to engage in pressured hard-sell sales tactics, which included, but were not limited to, misleading customers as to the efficiency and efficacy of the solar panels they sold, manipulating customers' concerns with what were referred to as "pain points," misrepresenting the Federal Solar Tax Credit as a tax rebate, and making false promises regarding the Federal Tax Credit in an attempt to make customers quickly sign a contract that they had no opportunity or ability to read.

24. Defendant Waller was intimately involved in designing, implementing, and teaching the fraudulent sales practices employed by Pink Energy's Agents/Employees and holds himself out as intimately familiar with the business of the Pink Energy Group; in fact, in the spring of 2021, Defendant Waller was a recipient of an MVP award and was described as "[i]t's not often a CEO is hands-on in the day-to-day aspects of running a business."[2]

---

[1] *SolarMarketplaceIntelReportH12021–H22021,*EnergySage,*Energysage.com/data* (last accessed Sept. 15, 2022).
[2] *Most Valuable People,* Corp! Magazine, Volume 24, No. 2, pg. 24 (March/April 2021).

25. Upon information and belief, all or most of the sales techniques/scripts were developed by Defendant Waller, who, in his own words, stated: "I started running the sales department and training reps myself."[3]

26. Upon information and belief, from 2017-2018, Defendant Waller attended all or substantially all of the Pink Energy's sales meetings and routinely pushed for the company's sales representatives to engage in hard-sell tactics, including those tactics described above.

27. Sometime after 2018, Defendant Waller began to attend meetings at Pink Energy's offices throughout the country, either in person or remotely, and continually pushed sales agents to engage in hard-sell tactics, including those described above.

28. Defendant Waller further admitted in his Book: *Own Your Own Power: No Excuses. No Bullsh\*t. The Time is Now,* that after he founded Pink Energy:

> I did everything. I called customers. I wrote up proposals. I closed deals. I took measurements. You name it. As a result, I know the company's business inside and out. I know every job. I could step into anyone's role and do the job. That is taking the stairs. When I motivate our sales guys today, I've been where they are" [4]

29. Upon information and belief, these sales tactics and techniques described by Defendant Waller are the same tactics and techniques used on Plaintiffs to secure a sale.

30. Defendant Waller carried over many of the sales techniques and business practices he developed in his prior companies, ISI Alarms, Inc and Power Home Technologies, Inc, to Pink Energy.

---

[3] *Jayson Waller of POWERHOME SOLAR: 5 Things I Wish Someone Told Me Before Became A Founder and CEO*, Candice Georiadis, Medium.com, https://medium.com/authority-magazine/jayson-waller-of-powerhome-solar-5-things-i-wish-someone-told-me-before-became-a-founder-and-ceo-7eee15ea1b44 (last accessed June 30, 2022).

[4] *Own Your Own Power: No Excuses. No Bullsh\*t. The Time is Now.* Jason Waller, 2021, Lion Crest Publishing, Pg. 58.

31.     Defendant Waller and ISI Alarms were subject to multiple state enforcement actions, including in Mississippi and North Carolina.

32.     Defendant Waller and ISI Alarms were subject to an enforcement action by the North Carolina Attorney General for, among other things, deceptive sales techniques.

33.     One such technique involved sending robocalls to inform consumers that the FBI was reporting an increase in break-ins in the consumer's area, they would be told that if they pressed a particular number on their phone, a representative would talk to them about the issue.

34.     North Carolina consumers who pressed the button as instructed were connected to a call center where they were given a sales pitch for Waller's alarm company and pressured to make a purchase.

35.     The North Carolina Attorney General named Defendant Waller in his capacity as an agent of ISI Alarms, but also in his individual capacity because he "formulated, directed, and controlled the marketing practices" of ISI Alarms.

36.     As a result of Waller's marketing practices, the State of North Carolina fined ISI Alarms and Waller $136,000 with the potential for a million-dollar additional penalty if Waller continued to conduct ISI business in an illegal manner.

37.     Pink Energy closed its doors in late September 2022; similarly, ISI Alarms also abruptly closed its doors after facing a number of state enforcement actions across the country.

38.     Upon information and belief, the Pink Energy Group implemented, trained, and encouraged their employees to use the tactics described above that were similar to those used by ISI Alarms and Waller's other previous companies.

39.     In 2018, Pink Energy, through Defendant Waller, engaged with Defendant Trivest to sell it an ownership interest in the company.

40.     Upon information and belief, Trivest purchased a 25% ownership interest in the company for approximately $15,000,000.00.

41.     Trivest positions itself as a "control-based" private equity investor meaning that it prefers to direct and control its portfolio companies.

42.     Upon information and belief, Defendant Trivest immediately became involved in the day-to-day operation of Pink Energy.

43.     In an interview with Defendant Waller and Trivest partner Jamie Elias, Defendant Trivest immediately "got to work implementing a series of improvements in collaboration with Waller."[5]

44.     Upon information and belief, Defendant Trivest also undertook all or a portion of Pink Energy's hiring and talent recruitment responsibilities.

45.     This included placing job postings on behalf of Pink Energy for positions ranging from call center employees to master electricians.

46.     Upon information and belief, the Pink Energy Group trained and encouraged their employees to use hard sell tactics, including providing Plaintiffs with "pain points" regarding their electric bill and referring to the electric company as "Dr. Evil" in an attempt to create a problem for which their solar system would provide a solution.

47.     Defendants and Pink Energy also used various hard sell techniques, such as providing cash incentives and erroneous promises and threats regarding the Federal Tax Credit in an attempt to create urgency to purchase in Plaintiffs, stating that such incentives may not be available if Plaintiffs did not sign that day.

---

[5] *How this Florida PE Firm Helped a Solar Business Grow 15X*, Kevin J. Ryan, Inc.com., https://www.inc.com/kevin-j-ryan/powerhome-trivest-solar-private-equity-growth.html (last accessed 10/26/2022).

48.     Once knowingly making the false, fraudulent, and misleading representations referred to above, the Pink Energy Agent/Employee produced an electronic copy of the Sales Agreement on his tablet for the Plaintiffs' review.

49.     Upon information and belief, the Sales Agreement was not provided in a written format and was only observable and reviewable on an electronic device.

50.     Pink Energy's Agent/Employee, with knowledge that the pace of review of the Sales Agreement was within his control, knowingly scrolled through each paragraph at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the content of the Sales Agreement.

51.     Upon the Pink Energy's Agent/Employee concluding his explanation of the Agreement, Plaintiffs were to sign via an electronic signature program (e.g., DocuSign), which included auto-filling Plaintiffs' initials after each paragraph.

52.     The Sales Agreement included a number of restrictive clauses, including an arbitration clause, limitation of liability, and the waiver of constitutional rights, none of which were discussed by the Pink Energy's Agent/Employee while supposedly reviewing the Sales Agreement with Plaintiffs.

53.     Relying on the summary of each provision as explained by the Pink Energy Agent/Employee, the Plaintiffs electronically signed the twenty-two-page Sales Agreement on or about September 15, 2020.

54.     Said Pink Energy Agent/Employee, acting in a dual capacity, then confirmed financing for the sale of the chosen solar system with a predetermined finance company acting in concert with the Pink Energy group.

55.    At the time of the home sale presentation, the Pink Energy Agent/Employee would, as an integral part of the presentation, provide Plaintiffs with one or more financial institutions chosen exclusively by the Pink Energy Group that they could select to finance their solar system.

56.    Upon information and belief, the Plaintiffs were not provided an option of securing alternative financing from those financial institutions selected by the Pink Energy Group.

57.    After completing the signing of the Sales Agreement, the Pink Energy Agent/Employee produced an electronic copy of the GoodLeap Financial Loan Agreement, which was presented to Plaintiffs in the same manner as the Sales Agreement.

58.    Upon information and belief, the Loan Agreement was not provided in a written format and was only observable and reviewable on an electronic device.

59.    Pink Energy's Agent/Employee, with knowledge that the pace of review of the Loan Agreement was within his control, knowingly scrolled through the Loan Agreement at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the contents of the Loan Agreement.

60.    Upon the Pink Energy's Agent/Employee concluding his explanation of each paragraph, Plaintiffs were to sign via an electronic signature program (e.g., DocuSign), which included auto-filling Plaintiff's initial after each paragraph.

61.    Relying on the summary of each provision as explained by the sales Agent/Employee, the Plaintiffs electronically signed the Loan Agreement, in the same manner, they signed the Sales Agreement.

62. Upon information and belief, the loan provided to Plaintiffs from Defendant GoodLeap was a "Purchase Money Loan" as defined in the Ohio Retail Installment Sales Act.

63.     The Loan Agreement contained a "Holder Rule" Notice subjecting Defendant Goodleap, as the loan holder, to "all claims and defenses which debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof," a contract provision which subjects Goodleap to any liability that may arise based on the misconduct of Defendant Pink Energy.

64.     Once the sale was complete, Pink Energy was then required to obtain the necessary permits and authorizations from various entities, e.g.  Homeowner Associations; local power companies servicing the Plaintiffs' dwelling; and local government permit offices.

65.     In or around December, 2020, an installation crew and/or a sub-contractor crew hired/retained by the Pink Energy Group as their agents and/or employees, arrived at Plaintiffs' residence and commenced the installation of the solar panel system.

66.     The installation crew had a putative crew leader who represented to the Plaintiffs that they were employees of Pink Energy.

67.     Further, the crew leader represented to Plaintiffs that the crew consisted of well-skilled craftsmen who were well-trained in the installation of solar panels.

68.     Upon information and belief, said representations were patently false.

69.     During pre-installation conversations with the Plaintiffs and during the installation of the various components of the solar system kit, the lack of qualifications and skill of the entire crew became apparent to the Plaintiffs.

70.     After the initial conversation with the Plaintiffs as described above, the installation crew, under the direction of the crew leader, commenced installation, resulting in substandard workmanship and property damage.

71.     Upon the representation by the Pink Energy Group that the solar system was properly installed and primed for activation, per the terms of the Sales Agreement, it was the Pink Energy Group's responsibility to ensure all required inspections of the final installed solar system were completed by the electrical supplier and any governmental entities.

72.     The failure of any one of the governmental and non-governmental agencies/organizations to inspect and pass the solar system would delay or prevent the system's activation resulting in added cost and loss of benefit to the Plaintiffs.

73.     Once the project was completed, the Pink Energy Group represented to the Plaintiffs that the installation of the solar system was completed by the installers, however, the system was never fully or consistently activated.

74.     Since installation and alleged activation of the system, the solar system consistently failed to produce the kilowatt hours contracted for with the Pink Energy Group.

75.     Pursuant to the estimates provided by the Pink Energy Group, the solar system purchased by the Plaintiffs was estimated to produce approximately 7,361 kilowatt hours per year.

76.     Pursuant to the estimates provided by the Pink Energy Group, the solar system, in conjunction with the "EEP" package, would provide a certain percentage of Plaintiffs' annual energy consumption.

77.     Defendants and/or Pink Energy explained that a significant portion of Plaintiffs' yearly electrical draw would be made up from the solar energy production and savings outlined above, with the remaining percentage coming from the electrical grid through their utility provider.

78.     In fact, the Plaintiffs' system generated, on average, significantly lower output than was quoted to them prior to signing the Sales Agreement.

79.     Plaintiffs' electric bills have remained largely unchanged since the activation of their solar system and now they must pay the amount billed by their electric company in addition to the new loan payment for the installation of the solar system.

80.     Despite the representations made by Defendants and Pink Energy, the solar system affixed to Plaintiffs' house has never provided the cost savings or energy production promised by Defendants and/or Pink Energy.

81.     Plaintiffs have continued to try to work with Defendants and Pink Energy regarding their solar system's issues as recently as spring 2022, yet Defendants and Pink Energy have failed to fix the problems with Plaintiffs' solar system and, in fact, have begun to ignore Plaintiffs' calls for customer support.

82.     Upon information and belief, Plaintiffs' experience with Defendants and Pink Energy has not been unique; in fact, Defendants and Pink Energy have continued to defraud similarly situated customers all throughout the State of Ohio and the rest of the United States and was aware of the issues its customers were facing.

## **FIRST CAUSE OF ACTION**
### **(Breach of Contract)**
### **(Against Defendants GoodLeap, Waller, and Trivest)**

83.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

84.     This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

85.     Pursuant to the terms of the Sales Agreement issued by Pink Energy and its Agent/Employee, the Pink Energy Group agreed and promised to install, activate and maintain a solar power system that would significantly lower Plaintiffs' electric consumption by reducing the

number of kilowatt hours drawn from the electric-grid and instead, produce sufficient kilowatt hours from the installed solar system to supply sufficient power for daily residential use, to store and/or sell excess kilowatt hours of electric power for future use.

86.   To date, the solar system installed by the Pink Energy Group has failed to meet the representations to Plaintiffs prior to signing the Sales Agreement.

87.   The Pink Energy Group has breached the terms of the Sales Agreement by failing to deliver a solar system that meets industry standards; by failing to install the system in a workmanlike manner; by failing to competently install and connect the various components of the system, by failing to activate the system according to the Sales Agreement and failing to maintain and or repair flaws in the system which occurred and continue to occur to the present date.

88.   As a direct and proximate result of said Defendants and Pink Energy's breach of contract, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

89.   As partial owners of Pink Energy, and in their individual capacities, Defendants Waller and Trivest were complicit with Pink Energy and are liable for the breach of contract.

90.   Plaintiffs ask this Court for an order of rescission for the Sales Agreement and Loan Agreement between Plaintiffs and Defendants and/or Pink Energy.

91.   Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

## SECOND CAUSE OF ACTION
### (Fraudulent Misrepresentation)
### (Against Defendants GoodLeap, Waller, and Trivest)

92.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

93.     This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

94.     As partial owners of Pink Energy, in their individual capacities, Defendant Waller, and Defendant Trivest were complicit with Pink Energy's fraudulent scheme.

95.     Pursuant to the Pink Energy Group's pre-sale solicitations and the representations made by the Pink Energy Agent/Employee as set forth in the final Sales Agreement entered into between Plaintiffs Pink Energy, the Defendants and Pink Energy owed a duty to Plaintiffs to disclose truthful and factually correct scientific and output performance data as to the quality of their system, the installation of the system the activation of the system and the quality of maintenance and repair of the system.

96.     Pink Energy and Defendants made false representations regarding facts material to the purchase, installation, performance, and maintenance and repair of their solar system as more fully outlined previously in this Complaint.

97.     Pink Energy and Defendants possessed actual and/or constructive knowledge of the falsity of their representations regarding the quality of their product, the quality of their installation, and the ability of their solar system to meet the estimates provided in the Sales Agreement.

98.     Pink Energy and Defendants made the fraudulent and false misrepresentations to matters of material fact as fully described herein with the intent to mislead Plaintiffs into relying

on such fraudulent and false misrepresentations.

99.    Defendant GoodLeap acted by and through its agent, the Pink Energy Agent/Employee.

100.    Upon information and belief, these fraudulent and false misrepresentations were part of the sales pitch developed by Defendant Waller.

101.    Defendant Waller has a history of deceptive trade practices.

102.    Defendant Waller had knowledge and was actively involved in formulating his company's fraudulent sales practices.

103.    Plaintiffs justifiably relied on Pink Energy and Defendants' fraudulent and false misrepresentations to their detriment.

104.    As a direct and proximate result of Pink Energy and/or Defendants' fraudulent misrepresentation, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

105.    Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

### THIRD CAUSE OF ACTION
**(Negligent Misrepresentation)**
**(Against Defendants GoodLeap, Waller, and Trivest)**

106.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

107.    This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

108.     As partial owners of Pink Energy, and in their individual capacities, Defendant Waller and Defendant Trivest were complicit with Pink Energy's fraudulent scheme.

109.     Defendants and Pink Energy had a pecuniary interest in the sale, installation, activation, and future maintenance and repair of the solar system.

110.     The Pink Energy Group, acting in a dual agency relationship with Defendant GoodLeap, supplied false information to Plaintiffs to influence the Plaintiffs' decision to purchase the Pink Energy solar power system, to have Pink Energy install and activate the system and maintain and repair the components of the system, and agree to a loan with Defendant GoodLeap.

111.     Upon information and belief, these misrepresentations were part of the sales pitch developed by Defendant Waller.

112.     Defendants and Pink Energy failed to exercise reasonable care or competence in obtaining or communicating such false information to Plaintiffs.

113.     Defendant GoodLeap acted by and through its agent, the Pink Energy Agent/Employee.

114.     Plaintiffs justifiably relied on the false information received from Pink Energy and the Defendants.

115.     As a direct and proximate result of Pink Energy and the Defendants' negligent misrepresentations, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

116.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

## FOURTH CAUSE OF ACTION
### (Fraud In The Inducment/Execution)
### (Against Defendants Waller, Trivest, and GoodLeap)

117.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

118.    This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

119.    Defendants and Pink Energy, by and through its employees/agents and with actual and/or constructive knowledge, made material misrepresentations and/or omissions regarding the sale, installation, activation, and future maintenance/repair of the components.

120.    As partial owners of Pink Energy, and in their individual capacities, Defendants Waller and Trivest were complicit with Pink Energy's fraudulent scheme.

121.    Defendant GoodLeap acted by and through its agent, the Pink Energy Agent/Employee

122.    Upon information and belief, Defendant Waller has a history of formulating, directing, and controlling fraudulent sales practices in his prior businesses.

123.    Upon information and belief, Defendant Waller, consistent with his past business practices, maintained hands-on control of the day-to-day activities of the business, including developing the sales strategy used by the Pink Energy Group.

124.    Plaintiffs justifiably relied on these misrepresentations and assurances when entering into the Sales and Loan Agreements.

125.    The Sales and Loan Agreements were further borne of fraud in the execution, by, among other ways, the sales agent failing to provide Plaintiffs with an opportunity to read the agreement, using significant time pressure and sales techniques, and erroneously assuring

Plaintiffs that the parties' oral understandings had been or would be accurately memorialized in the Sales and Loan Agreement.

126.    As a direct and proximate result of Pink Energy and the Defendants' fraudulent inducement, Plaintiffs have incurred consequential damages including, but not limited to, incurring significant debt, loss of the benefit of the bargain, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

127.    Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Sales Agreement)**

128.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

129.    This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

130.    Pursuant to the terms of the Sales Agreement, this Court should rely upon Ohio law when reviewing the Sales Agreement and Arbitration Clause.

131.    This Declaratory Judgment action is brought pursuant to Ohio Revised Code, § 2721.01, *et seq.* to declare the rights and other legal relations of the parties.

132.    Pink Energy's Agent/Employee surreptitiously acquired Plaintiffs' signatures on the Sales Agreement, including the Arbitration Provision, without Plaintiffs' knowledge and consent by, among other ways, having them sign the Sales Agreement electronically without giving them the chance to review the terms of the Sales Agreement and instead summarizing its terms, and using high pressured sales tactics to place significant time pressure on Plaintiffs.

133. The Limitations of Liability and Arbitration clauses found in the Sales Agreement are void as a matter of law as they fail to provide Plaintiffs with a meaningful remedy.

134. The Sales Agreement, including, but not limited to, the Arbitration clause and the Limitation of Liabilities clause, as a whole, is manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties; and the Sales Agreement is not consistent with the intention of the parties that damages in the amount stated should follow the breach.

135. The Sales Agreement was further borne of fraud in the inducement and fraud in the execution, by, among other ways, failing to provide Plaintiffs with an opportunity to read the agreement, using significant time pressure and sales techniques, and erroneously assuring Plaintiffs that the parties' oral understanding had been or would be accurately memorialized in the Sales Agreement.

136. As more fully set forth herein, the Sales Agreement was provided on the Pink Energy Agent/Employee's personal electronic device and controlled by the Pink Energy Agent/Employee as instructed by the Pink Energy Group.

137. The Plaintiffs were then instructed to electronically sign said agreement based solely on the Pink Energy Agent/Employee's interpretation of the various clauses to include the Limitations of Liability and Arbitration Clause; and said presentation failed to meet any meaningful review of both clauses by Plaintiffs.

138. Additionally, as more fully set-forth herein, Plaintiffs were promised additional financial and/or tax incentives if they signed the Sales Agreement before the expiration of said additional financial incentives, further increasing the pressure on the Plaintiffs to sign the Sales

Agreement on the day of presentation and further evidencing Plaintiffs' position that Pink Energy and/or the Defendants failed to fully explain the Limitation of Liability and Arbitration clauses.

139.    Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the arbitration clause and thus, there was no agreement from Plaintiffs to the Arbitration clause.

140.    Plaintiffs request this Court enter a declaration that the Limitation of Liability clause and the Arbitration clause in the Sales Agreement void as a matter of law.

<div align="center">

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Loan Agreement)**

</div>

141.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

142.    This Declaratory Judgment action is brought pursuant to 28 U.S. Code, § 2201 and/or Ohio Revised Code, § 2721.01, *et seq.* to declare the rights and other legal relations of the parties.

143.    Pink Energy's Agent/Employee surreptitiously acquired Plaintiffs' signatures on the Loan Agreement, including the Arbitration Provision, without Plaintiffs' knowledge and consent by, among other ways, having them sign the Loan Agreement electronically without giving them the chance to review the terms of the Loan Agreement and instead summarizing its terms, and using high pressured sales tactics to place significant time pressure on Plaintiffs.

144.    The Limitations of Liability and Arbitration clauses found in the Loan Agreement are void as a matter of law as it fails to provide Plaintiffs with a meaningful remedy.

145.    The Loan Agreement as a whole is manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention

of the parties; and is not consistent with the intention of the parties that damages in the amount stated should follow the breach.

146.    The Loan Agreement was further borne of fraud in the inducement and fraud in the execution, by, among other ways, failing to provide Plaintiffs with an opportunity to read the agreement, using significant time pressure and sales techniques, and erroneously assuring Plaintiffs that the parties' oral understanding had been or would be accurately memorialized in the Loan Agreement.

147.    As more fully set forth herein, the Loan Agreement was provided by the Pink Energy Agent/Employee on a personal electronic device and controlled by the Pink Energy Agent/Employee as instructed by Pink Energy.

148.    The Plaintiffs were then instructed to electronically sign said agreement based solely on the Pink Energy Agent/Employee's interpretation of the various clauses to include the Limitations of Liability and Arbitration Clause; and said presentation failed to meet any meaningful review of both clauses by Plaintiffs.

149.    Additionally, as more fully set forth herein, Plaintiffs were promised additional financial and/or tax incentives if they signed the Sales Agreement before the expiration of said additional financial incentives, further increasing the pressure on the Plaintiffs to sign the Sales Agreement on the day of presentation and further evidencing Plaintiffs' position that the Defendant failed to fully explain the Limitation of Liability and Arbitration clauses.

150.    Plaintiffs request this Court enter a declaration that the Limitation of Liability clause and the Arbitration clause in the Loan Agreement between Plaintiffs and Defendant GoodLeap are void as a matter of law.

151. Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the arbitration clause, and thus, there was no agreement from Plaintiffs to the Arbitration clause.

152. Plaintiffs assert the Arbitration Provision does not contain a delegation clause.

153. If, however, the Court determines the Arbitration Provision contains a delegation clause, Plaintiffs assert such clause is void as a matter of law in that there was no meeting of the minds and does not express the true intention of the parties.

154. Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the delegation clause, and thus, there was no agreement from Plaintiffs to the delegation clause, and further, that the delegation clause is void as a matter of law.

**SEVENTH CAUSE OF ACTION**
**(Negligent Selection/ Retention and Training)**
**(Against Defendants GoodLeap, Waller, and Trivest)**

155. Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

156. This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

157. As partial owners of Pink Energy, and in their individual capacities, Defendants Waller and Trivest were complicit with Pink Energy's fraudulent scheme.

158. Plaintiffs state that Pink Energy and Defendants owed a duty of exercising reasonable care in hiring and training its contractors and/or employees to sell, install, activate, and maintain the solar systems installed on Plaintiffs' properties.

159.     Plaintiffs state that Pink Energy and Defendants breached their duty to Plaintiffs in failing to exercise reasonable care in hiring and failing to properly train the contractors and/or employees responsible for installing and/or maintaining the solar systems installed on Plaintiffs' properties.

160.     Upon information and belief, and per Defendant Waller's own words, Defendant Waller personally oversaw and developed the sales training/techniques used by the Pink Energy Group and GoodLeap salespeople.

161.     Upon information and belief, Defendant Trivest undertook all or a substantial portion of Pink Energy's recruitment and hiring responsibilities.

162.     Plaintiffs state that Pink Energy and Defendants breached their duty to Plaintiffs in failing to exercise reasonable care in hiring and failing to properly train the employees who advised Plaintiffs regarding the sale of the solar system.

163.     As a direct and proximate result of the aforementioned breach, Plaintiffs have suffered those damages as set forth in the General Allegations and other causes of actions.

164.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

### EIGHTH CAUSE OF ACTION.
**(Breach of Warranty)**
**(Against Defendants GoodLeap, Waller, and Trivest)**

165.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

166.     This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

167.     Plaintiffs state that there have been no substantial changes to the installed solar system from its condition when it was designed, manufactured, marketed, supplied, distributed and/or sold and/or installed by Pink Energy and Defendants.

168.     In supplying, delivering and/or installing said solar system, Defendants and Pink Energy expressly warranted their product as evidenced by Paragraph 7 of the Sales Agreement attached hereto.

169.     The said Defendants and Pink Energy breached those express and implied warranties by, among other things, delivering, and/or supplying, and/or selling and/or installing said solar system in an unsafe, defective, and unfit condition.

170.     As a direct and proximate result of Pink Energy and said Defendants' breach of warranty, Plaintiffs suffered damages.

171.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

### NINTH CAUSE OF ACTION
**(Violations of the Ohio Consumer Protection Act)**
**(Against Defendant GoodLeap, Waller, and Trivest)**

172.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

173.     This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

174.     Plaintiffs are, individually, "consumers" within the meaning of O.R.C. §1345.01(D).

175.     Pink Energy is a "supplier" as that term is defined by ORC §1345.01(C).

26

176.     Pink Energy's sale of solar systems to Plaintiffs is a "consumer transaction" as defined by ORC §1345.01(A), as the transaction involved a sale of an item of goods in which Plaintiffs purchased a consumer good from Pink Energy.

177.     As detailed above, supra, Pink Energy and/or Defendant Waller committed unconscionable, unfair, and unlawful acts and practices by among other things, engaging in high-pressure sales tactics, including threats that Plaintiffs would lose a solar tax credit (among other benefits) if they did not immediately sign the Sales Agreement and repeatedly quoting the individual Plaintiffs with estimates of power output that Pink Energy and/or Defendant Waller knew, or should have known, their systems were incapable of producing.

178.     Upon information and belief, these high-pressure sales techniques were part of the sales pitch/techniques developed by Defendant Waller.

179.     Pink Energy and Defendant Waller's conduct violates ORC 1345 *et seq.* as an unfair, unconscionable, and/or deceptive act in connection with a consumer transaction.

180.     Pink Energy and the Defendants further engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiffs.

181.     Upon information and belief, Defendant Trivest, who was an owner of Pink Energy, was aware of the misconduct being undertaken by Pink Energy, Defendant Waller, Trivest, and/or Goodleap's agents/employees.

182.     Upon information and belief, Defendant Trivest was engaged in furthering Pink Energy and Defendant Waller's scheme.

183.     Therefore, Trivest is liable for the above-described conduct and violations committed by Pink Energy the other Defendants.

184.    As a direct and proximate result of the foregoing, Plaintiffs have suffered injuries including, but not limited to actual damages and consequential damages.

185.    As a result of the violations of Pink Energy and/or Defendants, Plaintiffs are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

186.    Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

## TENTH CAUSE OF ACTION
### (Civil Conspiracy)
### (Against Defendants GoodLeap, Waller, and Trivest)

187.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

188.    This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

189.    The cost of installation of the solar system was greatly overpriced, requiring Plaintiffs to pay more than double the cost of the national average per kilowatt hour for a similar solar system in 2020.

190.    Knowing that having easily available credit extended to the potential purchaser of the system would further promote the sale of the system Pink Energy, along with Defendants, conspired together to facilitate the sale of the system.

191.    Upon information and belief, other than the specific lenders provided by the Pink Energy Group, Plaintiffs were unaware they could seek financing through a third party.

192.    Defendant GoodLeap knew, or should have known, that the Pink Energy Group secured the signing of the Sales and Loan Agreements with Plaintiffs through fraudulent, false,

and misleading representations at the time of the sale and said fraudulent conduct continues to the present day.

193.    Upon information and belief, Defendant GoodLeap had specific employees and/or departments dedicated to "Partner Relations" that was intimately familiar with the Pink Energy Group and its sales practices and further informed Plaintiffs that they were partnering with Pink Energy.

194.    Having such knowledge, Defendant GoodLeap acted in concert with the Pink Energy Group in facilitating the fraudulent conduct by agreeing to be one of the financial institutions provided to customers, including Plaintiffs, by the Pink Energy Group.

195.    Having entered into this conspiratorial relationship, Pink Energy and the Defendants acted to secure the Sales and Loan agreements and ultimately for Defendant GoodLeap to provide the financing of said system.

196.    Defendant GoodLeap benefited from this conspiracy by securing Plaintiffs as a payor and ensuring that independent of whether the Pink Energy Group actually performed all duties under the Sales Agreement, the Plaintiffs would be obligated to satisfy the loan.

197.    Upon information and belief, Defendant Trivest was aware of the misconduct being undertaken by Pink Energy and the other Defendants.

198.    Upon information and belief, Defendant Trivest was engaged in furthering Pink Energy the other Defendant's scheme.

199.    Defendant GoodLeap's conduct was knowing, intentional, reckless, and malicious.

200.    Defendant Waller's conduct was knowing, intentional, reckless, and malicious.

201.    Defendant Trivest's conduct was knowing, intentional, reckless, and malicious.

202.     As a direct and proximate result of the foregoing, Plaintiffs have suffered injuries including, but not limited to actual damages and consequential damages.

203.     As a result of the conspiracy between Pink Energy and/or Defendants, Plaintiffs are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

## ELEVENTH CAUSE OF ACTION
### (Negligence)
### (Against Defendant GoodLeap, Waller, and Trivest)

204.     Plaintiffs hereby incorporate the preceding paragraphs of this Complaint, inclusive, as though fully rewritten and alleged herein.

205.     This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

206.     The Pink Energy Group, by and through their employees/agents, owed a duty to individuals, including Plaintiffs, to use reasonable care when selling, installing, and monitoring its solar system products.

207.     The Pink Energy Group, by and through its employees/agents, breached its duty and was negligent in, among other things, providing Plaintiffs with incorrect information regarding the output expected from their solar system, causing damage to Plaintiffs' property while installing the solar system, failing to monitor/maintain its solar system, and failing to cure any problems or defects that arose after the installation was complete.

208.     Upon information and belief, this false and incorrect information was part of a sales strategy developed and implemented by Defendant Jayson Waller.

209.     Upon information and belief, Defendant Trivest was aware of the negligent conduct being undertaken by the Pink Energy Group and/or GoodLeap employees.

210. Upon information and belief, Defendant Trivest was engaged in furthering the other Defendants' scheme.

211. Therefore, Trivest is liable for the above-mentioned negligent conduct and violations committed.

212. As a direct and proximate result of Pink Energy's negligence, Plaintiffs have suffered injuries and damages as more fully explained in the General Allegations set forth in this Complaint.

213. Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

## TWELFTH CAUSE OF ACTION
**(Declaratory Judgment to disregard Power Home Solar's limited liablity protection form and hold Defendant Waller Personally Liable for any and all damages associated with his formulation, direction, and control over Pink Energy's fraudulent sales and marketing practices)**

214. Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

215. This Declaratory Judgment action is brought pursuant to 28 U.S. Code, § 2201 and/or Ohio Revised Code, § 2721.01, *et seq.* to declare the rights and other legal relations of the parties.

216. Defendant Waller has maintained and held himself out as maintaining hands-on control of the day-to-day operations of Pink Energy.

217. Prior to forming Pink Energy (f/k/a PowerHome Solar, LLC), Defendant Waller was found to have personally engaged in deceptive trade practices in the State of North Carolina.

218.    Upon information and belief, many of the same deceptive trade practices Defendant Waller implemented at his prior company, ISI Alarms, Inc., were also implemented by Defendant Waller to train Pink Energy sales representatives.

219.    Defendant Waller used the limited liability form of Pink Energy in furtherance of his fraudulent sales and marketing programs.

220.    Plaintiffs request this Court enter a declaration that Defendant Waller is not protected or shielded by Pink Energy's corporate form.

<div align="center">

**THIRTEENTH CAUSE OF ACTION**
**(Punitive Damages Claim)**
**(Against Defendants GoodLeap, Waller, and Trivest)**

</div>

221.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

222.    This Cause of Action will also be pled against Pink Energy upon the lifting of the automatic bankruptcy stay.

223.    Plaintiffs state that the Pink Energy and the Defendants recklessly and maliciously displayed a conscious disregard for the rights of Plaintiffs by, among other things, fraudulently misrepresenting material facts knowing that such failures and misrepresentations would result, with substantial certainty, in injury and in damage to Plaintiffs.

224.    Plaintiffs further state that Defendant GoodLeap acted in concert with the Pink Energy Group as more fully explained in Plaintiffs' Tenth Cause of Action for Civil Conspiracy.

225.    Plaintiffs further state that Defendant Trivest acted in concert with Pink Energy and the other Defendants as more fully explained in Plaintiffs' Tenth Cause of Action for Civil Conspiracy.

226. Plaintiffs further state that Defendant Trivest took over many of the day-to-day operations for Pink Energy including hiring and recruitment and was intimately aware of Pink Energy's conduct.

227. As a direct and proximate result, Plaintiffs suffered those damages as fully set forth and described in Plaintiffs' preceding Causes of Action and is entitled to an award of punitive damages against Defendants GoodLeap, Waller, and Trivest.

228. Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant GoodLeap is subject to the same claims and defenses asserted against Defendants Waller and Trivest, and which will be asserted against Pink Energy.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, GoodLeap, LLC., Jayson Waller, and Trivest Partners, L.P., equally and severally in an amount exceeding $75,000.00 in compensatory and punitive damages, attorneys' fees, interest, cost, and further relief to which Plaintiffs may be entitled. Plaintiffs further pray this Court enter judgment declaring the Arbitration provisions/clauses in the Sales Agreement and Loan Agreement unenforceable and void as a matter of law and further disregarding Pink Energy's corporate form as against Jayson Waller.

<div style="margin-left: 40%">

Respectfully submitted,

*/s/ Stacie L. Roth*
Stacie L. Roth (0071230)
Richard D. Reinbold (0024152)
Andrew R. Burton (0100996)
**SCHULMAN, ROTH & ASSOC. CO., LPA.**
The Carnegie Building
236 3rd Street SW
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyourside.com
aburton@lawyersonyourside.com

And

</div>

*/s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
236 3rd Street SW
Canton, Ohio 44702
330-497-8614
330-456-3641 (FAX)
Btscholl740@@@yahoo.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on December 14, 2022, a true and accurate copy of the foregoing was filed on the Court's ECF system. Notice of this filing will be delivered to counsel of record by the Court's ECF system. Copies of the filing are available from the Court's system.

*/s/ Stacie L. Roth*
Counsel for Plaintiffs

## REQUEST FOR ISSUANCE OF SUMMONS

Plaintiffs hereby state that pursuant to Federal Civil Rule 4(b), Plaintiffs have presented a Summons for Defendant Trivest Partners, L.P. Plaintiffs hereby request that said Summons be signed and sealed by the Clerk of Courts and issued to Plaintiffs for service.

*/s/ Stacie L. Roth*
Counsel for Plaintiffs